UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THURMOND ALLEN JR.,** : | |
| Plaintiff : | **CIV. ACTION NO. 3:25-CV-1136** |
| v. : | **(JUDGE MANNION)** |
| **PENNSYLVANIA DEPARTMENT OF CORRECTIONS,** *et al.*, : | |
| : | |
| Defendants | |

### MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. §1983 in which plaintiff alleges civil rights violations arising from loud noises in her cell block and defendants purportedly calling her a snitch in front of other inmates. For the reasons set forth below, the complaint will be dismissed with prejudice except to the extent that it asserts deliberate indifference and retaliation claims against defendants Heenan, Pleiss, and Smith.

**I.    BACKGROUND**

Plaintiff, Thurmond Allen Jr., filed this case on June 15, 2025, and the court received and docketed her[1] complaint on June 23, 2025. (Doc. 1). Allen, who has been incarcerated in Mahanoy State Correctional Institution ("SCI-Mahanoy") at all relevant times, alleges that when she attempted to go to sleep around 9:00 PM on May 30, 2023, two inmates in the cell directly above her, James Allen Hefner and David Phillips, began making a significant amount of noise by "pounding the walls, stomping the floor, dropping things on the floor, [playing] loud music, playing drums with the metal sink by slapping it, dropping things on the metal toilet, continuously flushing the toilet, and popping sink buttons and laughing about it." (*Id.* at 6). The other inmates' noise prevented Allen from falling asleep. (*Id.*) Allen asked the inmates if they could be quiet, and they responded by telling her, "fuck you" through the air vent that connected their cells. (*Id.*)

---

[1] In an earlier case filed by plaintiff, the court referred to plaintiff by the masculine pronouns "he" and "him," which was in accordance with plaintiff's pronoun usage in that case. *See Allen v. Wellpath LLC*, No. 1:24-CV-1536, Docs. 37-38 (M.D. Pa. Aug. 20, 2025). The court now refers to plaintiff by the feminine pronouns "she" and "her" because plaintiff states in the complaint in this case that she identifies as a transgender woman and uses feminine pronouns.

The complaint additionally alleges that the plumbing in Allen's cell and the rest of SCI-Mahanoy makes "excessive noises." (*Id.*) Allen allegedly began suffering insomnia and various other physical symptoms from the loud noises. (*Id.*)

Allen asked several defendants to help her with the excessive noise in the weeks that followed by either moving her to a different cell, moving Hefner and Phillips to a different cell, giving Allen pain or sleep medication, or submitting a work order for the plumbing to be fixed, including defendants "Boguslaw," Walter, MacKnight, Heenan, Moran, Fisher, Dreher, Mason, Mahallay, Griffin, Eyer, Moore, Varner, Kilgore, Charles, and various John and Jane Does. (*Id.* at 7-11). The defendants allegedly denied or ignored her requests. (*Id.*)

The complaint alleges in conclusory fashion that various defendants "conspired" to label Allen a "rat," a "snitch," and an "informant," beginning on July 25, 2023. (*Id.* at 12). That morning, defendants Heenan, Moran, Kilgore, and John Doe 4 came to Allen's cell to speak about her grievances and Heenan allegedly stated that Allen was "telling on" the other inmates. (*Id.*) The complaint alleges that this conduct labeled Allen as a "'rat' and 'snitch' and 'informant'" to other inmates. (*Id.* at 13). The complaint asserts that shortly after the conversation began, other inmates in the unit began calling

3

Allen "rat," "snitch," and "informant." (*Id.*) Heenan purportedly stated that Allen was the only inmate complaining about the excessive noise and that no other inmates had complained. (*Id.*) Heenan then asked another inmate nearby if he heard the noises, and the other inmate stated that he heard banging but did not know what it was. (*Id.*) At the conclusion of the conversation, Heenan stated that she was going to move Allen to a different cell. (*Id.* at 14). Allen asked if the inmates from the other cell could be moved instead, but Heenan denied the request. (*Id.*) The complaint asserts that discussing Allen's complaint about the noise at her cell in front of other inmates risked harm to Allen from other inmates. (*Id.*) Shortly after the conversation with Heenan, Allen purportedly began receiving verbal threats and harassment from other inmates. (*Id.* at 14-16). Defendants purportedly heard the abuse and threats but failed to place Allen in administrative custody to protect her. (*Id.* at 14-15).

On July 26, 2023, Allen was transferred to a different cell in a different housing block. (*Id.* at 15-16). Upon her arrival in the new housing block, another inmate purportedly stated he had heard Allen ratted out the inmates in the previous housing block. (*Id.* at 16). Another inmate purportedly started calling Allen a "cold rat." (*Id.*) Allen submitted a request slip to defendant Dreher about the other inmate calling her a rat. (*Id.*) Inmates in the new

housing block then began making excessive noise in the same manner as the inmates in the old cell block, and Allen purportedly noticed that the plumbing was just as loud as it had been in the other block. (*Id.*)

On July 27, 2023, another inmate was handing out breakfast trays, called Allen a rat, and gave her a carton of rotten milk. (*Id.* at 17). Allen spoke about her concerns with defendant Walter later that day, but Walter purportedly did not refer Allen for medication, submit a work order for plumbing work, or do anything to keep Allen safe from the other inmates. (*Id.*) Allen continued to suffer verbal abuse from other inmates. (*Id.*)

Later on July 27, 2023, Allen overheard a John Doe inmate talking about having drugs and weapons in the prison. (*Id.* at 17-18). Allen submitted an anonymous tip to prison officials, who subsequently sent the John Doe inmate to the restricted housing unit ("RHU") based on the tip. (*Id.* at 18). Another inmate named Medina purportedly learned from unnamed defendants that Allen was the person who submitted the anonymous tip, after which Medina repeatedly called her a rat. (*Id.*)

On July 29, 2023, defendant Pleiss, a correctional officer, was walking past Allen's cell when Allen handed her a piece of paper asking if she could make the inmates in nearby cells stop making so much noise. (*Id.* at 18). Pleiss purportedly loudly denied the request so that other inmates could hear

5

her doing so. (*Id.*) The complaint asserts that this action was done to show that Allen was a "rat." (*Id.*) At approximately 1:50 AM on July 30, 2023, defendants Pleiss and Smith came to Allen's cell and purportedly stated that they knew Allen had been complaining about inmates in her old cell block making too much noise and that she was now making the same complaints about inmates in the new cell block. (*Id.* at 18-19). Other inmates began calling her a rat and threatening her. (*Id.* at 19-20). Allen repeatedly requested that prison staff members help her with the excessive noise from other inmates and the plumbing, but they did not help her. (*Id.* at 21-22).

The complaint asserts numerous claims for relief arising from: (1) defendants' refusal to help Allen with the excessive noise from other inmates and the plumbing; (2) medical defendants' refusal to provide her medication and other treatment; and (3) defendants labeling her a rat, a snitch, and an informant.[2] (*See id.* at 27-63). Allen has additionally filed a motion for a

---

[2] Because Allen's claims are set out over 35 pages, assert hundreds of individual claims, and contain innumerable subparts, asides, and statements of claims that are not clearly explained, the court limits its summary of plaintiff's claims to the three categories of claims that can reasonably be understood based on the text of the complaint. To the extent any other claims are advanced, they are dismissed for failure to state a claim upon which relief may be granted because Allen has not adequately explained the factual basis of the claims or has failed to allege sufficient facts in support of them.

temporary restraining order, which seeks an injunction relating to the excessive noise made by other inmates and the prison plumbing. (Doc. 9).

## II. DISCUSSION

### A. Screening

This court must review a complaint when "a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). If a complaint fails to state a claim upon which relief may be granted, the court must dismiss the complaint. *Id.* §1915A(b)(1). The court has a similar screening obligation regarding actions filed by prisoners proceeding *in forma pauperis*. *Id.* §1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted.").

In screening legal claims under Sections 1915A(b) and 1915(e)(2)(B), the court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g.*, *Coward v. City of Philadelphia*, 546 F. Supp. 3d 331, 333 (E.D. Pa. 2021); *Smith v. Delaware*, 236 F. Supp.3d 882, 886 (D. Del. 2017).

To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" to show that the claim is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard requires more

than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679.

When evaluating the plausibility of a complaint, the court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. *Id.* However, the court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Section 1915A and 1915(e)(2). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Courts must liberally construe complaints brought by *pro se* litigants. *Sause v. Bauer*, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff's claims are filed pursuant to 42 U.S.C. §1983. Section 1983 authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . .

>subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. §1983. Thus, to establish a successful claim under Section 1983, a plaintiff must demonstrate that the challenged conduct was committed by a person acting under color of state law and deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997). By its terms, Section 1983 does not create a substantive right, but merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. *Baker v. McCollan*, 443 U.S. 137 (1979).

A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence. *Id.*

At the outset, the court will dismiss with prejudice all of plaintiff's claims arising from the excessive noise from other inmates and the plumbing in the prison. Excessive noise in a prison setting only violates a plaintiff's constitutional rights if it is "so excessive and pervasive that it posed a serious risk of injury" to the plaintiff. *Whitney v. Wetzel*, 649 F. App'x 123, 127 (3d Cir. 2016). Here, the loud noise in Allen's housing block appears to be nothing more than an annoyance that could likely be remedied through the use of ear plugs or other simple solutions. This minor irritation does not violate Allen's constitutional rights. *See id.* ("At most, Whitney has shown that the noise in the SMU is 'irritating,' which 'cannot fairly be said to inflict cruel and unusual punishment.'" (quoting *Peterkin v. Jeffes*, 855 F.2d 1021, 1027 (3d Cir. 1988))). There is also simply no basis to conclude that the noise in the block was sufficiently excessive to state a claim under Pennsylvania state tort law or under any other legal theory.

The court will likewise dismiss Allen's claims arising from the failure to provide medical treatment. Allen's medical treatment claims are based on defendants' purported failure to prescribe her sleep or pain medication or provide other treatment for the insomnia she suffered as a result of the excessive noise in the prison. This amounts to nothing more than a disagreement with medical professionals as to what treatment was

necessary, which is not sufficient to state a claim for violation of the Eighth Amendment. *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

Allen's claim that defendants Heenan, Pleiss, and Smith placed her in danger by labeling her a snitch, however, will be allowed to proceed. Allen asserts that Heenan stated that she was "telling on" other inmates and that inmates immediately began threatening her and calling her a snitch and a rat immediately thereafter. Similarly, Allen alleges that Pleiss and Smith loudly referred to Allen complaining about other inmates in a manner that made other inmates think that Allen was a snitch. These allegations are sufficient to state claims for deliberate indifference to a risk of harm in violation of the Eighth Amendment. *See Robinson v. Danberg*, 673 F. App'x 205, 214 (3d Cir. 2016) (noting that plaintiff may state a claim for deliberate indifference based on defendant allegedly labeling him a snitch in front of other inmates, but ultimately granting summary judgment for plaintiff's failure to substantiate the claim with supporting evidence). They are also sufficient to state claims for retaliation in violation of the First Amendment, because it is alleged that Heenan, Pleiss, and Smith labeled Allen a snitch in retaliation for her complaining about the excessive noise in the housing unit. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (noting that plaintiff advancing retaliation

11

claim must allege constitutionally protected conduct, retaliatory action, and causal connection between the two).

No other defendants, however, can be held be liable for these defendants' actions. Although several other defendants were allegedly present when Heenan stated that Allen was "telling on" other inmates, there is no allegation that the officers were aware that Heenan would make these comments or had the opportunity to stop her from doing so other than the conclusory assertion that the defendants "conspired together." (*See* Doc. 1 at 12). This conclusory assertion is not sufficient to establish their personal involvement. Similarly, to the extent Allen has sued defendants based on their failure to adequately respond to Allen's complaints and grievances about Heenan Pleiss, and Smith's actions, their after-the-fact responses to her grievances and complaints is not sufficient to establish their personal involvement. *Dooley v. Wetzel*, 957 F.3d 366, 375 (3d Cir. 2020). Thus, the case will be allowed to proceed against defendants Heenan, Pleiss, and Smith, but the claims against all other defendants will be dismissed.

**B.    Leave to Amend Will Be Denied**

Before dismissing a civil rights claim for failure to state a claim, a district court must permit a curative amendment unless the amendment would be inequitable or futile. *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d

Cir. 2008). The court will deny leave to amend as futile in the instant case. It is clear from the face of Allen's complaint that the noise in the prison is not sufficient to support a claim upon which relief may be granted and that Allen's claims asserting inadequate medical treatment are nothing more than disagreements with medical professionals. Thus, because the dismissed claims fail as a matter of law, amendment would be futile.

### C. Motion for Temporary Restraining Order

Finally, because Allen's motion for temporary restraining order seeks injunctive relief that is solely related to her claims of excessive noise in the prison, the court will deny the motion in light of its dismissal of those claims.

### III. CONCLUSION

For the foregoing reasons, the court will dismiss with prejudice all claims in this case except plaintiff's deliberate indifference and retaliation claims against defendants Heenan, Pleiss, and Smith and deny Allen's motion for temporary restraining order. All other defendants will be terminated from the case. An appropriate order shall issue.

*s/ Malachy E. Mannion*
**Malachy E. Mannion**
**United States District Judge**

Dated:   September 2, 2025
25-1136-01